IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| JOHN CROWE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 0:03-3786-CMC |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | ON DISCOVERY MOTIONS |
| HILLCREST FOODS, INC., and | ) | |
| WAFFLE HOUSE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Defendant Hillcrest Foods' ("Hillcrest's") motion for a protective order (Dkt No. 60) and on Plaintiff's motion to compel and to reconsider limits imposed on the scope of discovery (Dkt No. 69). For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied in part and granted in part.

**Defendant Hillcrest's motion for a protective order.** During the Rule 30(b)(6) deposition of Hillcrest's corporate representative, Michael Carey, defense counsel directed Carey not to respond to certain inquiries. Specifically, counsel directed Carey not to respond to inquiries as to whether he, as representative of Hillcrest, admitted or denied allegations contained in specified paragraphs of the complaint.[1]

Hillcrest, thereafter, moved for a protective order as required by Local Civil Rule 30.04. Plaintiff responded with a counter motion to compel discovery (including other aspects of Carey's testimony) and a consolidated memorandum purporting to oppose Hillcrest's motion and to support

---

[1] As stated in the deposition, the objection was based in part on attorney-client privilege and work product protection concerns (apparently based on the source of the witness' knowledge of other witnesses' testimony and statements) and in part based on the impropriety of asking a Rule 30(b)(6) witness to address matters as to which the opposing party already has the formal corporate response (in the form of the answer itself).

Plaintiff's own motion.[2]

Plaintiff's consolidated memorandum does not address the specific issue raised in Hillcrest's

motion, which is the propriety of asking the opposing party's Rule 30(b)(6) representative to admit

or deny specified paragraphs of the complaint or quoted factual allegations from the complaint.

Thus, Plaintiff has failed to offer any substantive opposition to Hillcrest's motion.[3]  Moreover, as

Plaintiff already had Hillcrest's answer to the complaint, this set of inquiries would not appear to

serve any useful purpose.   For these reasons, the court grants Defendant's motion for a protective

order upholding counsel's directives to Carey not to respond to the specified inquiries.

**Plaintiff's motion to compel and reconsider.**

The text of Plaintiff's motion to compel and reconsider suggests six separate sets of concerns

but closes by asking the court to: (1) "compel disclosure of evidence regarding the circumstances of

the demographic studies produced by Defendant Hillcrest and provided to Defendant Waffle House";

(2) compel "disclosure of the statements of Loretta Coleman to Defendant Hillcrest including but

not limited to [her] statements to Attorney Neil McGuinness [Hillcrest's attorney]"; and (3)

"reconsider the [limitation of] the scope of discovery [and allow] discovery of customer complaints

of race discrimination arising out of Hillcrest restaurants in the Carolinas region." Dkt No. 69 at 2-3.

---

[2] It is only rarely appropriate to combine a memorandum in response to one motion with a memorandum in support of another.  Such rare instances arise when the motions are, in fact, cross motions addressing the same issues.  Here, the consolidation has served only to confuse the issues and may, in fact, explain Plaintiff's failure to address the one point raised in Hillcrest's motion.

[3] Plaintiff's only direct reference to the argument made in Hillcrest's motion is Plaintiff's statement that the questions relating to "the factual basis of the Answer" were posed "[i]n exasperation at [Carey's] dissembling lack of response" to other inquiries. Dkt No. 69-2 at 3.  To the extent this is a response, it appears to be a concession that the inquiries were not appropriate.

**Demographic studies.**  Plaintiff argues that Hillcrest should be required to supplement testimony given by its Vice President Todd Miller, who also testified as a Rule 30(b)(6) witness. Specifically, Plaintiff seeks information regarding inquiries which Miller was not able to answer during his deposition including "how, when [and] by whom [specified demographic] studies were requested" and "any correspondence regarding the demographic studies." Dkt No. 69-2 at 7.

Hillcrest responds that it has agreed to and will provide supplementation of this information and that there is, therefore, nothing for the court to decide.  Plaintiff has not replied with any suggestion that the supplementation has not been provided or is not adequate.  Moreover, Plaintiff's own motion acknowledged that Defendant had made such an agreement.

The motion is, therefore, denied based on the understanding that Defendant has agreed to and will provide the relevant information.  If not already produced, Defendant shall complete this production within five days of entry of this order.

**Statements of Loretta Coleman.**  Ms. Coleman is the Waffle House manager to whom Plaintiff made his initial complaint.  Coleman's understanding of the nature of Plaintiff's complaint, that is whether it was a complaint of racial discrimination or merely of poor service, is in dispute. Ms. Coleman allegedly made statements to Plaintiff and to a fellow employee which suggest she understood the complaint to have a racial discrimination component.  While the date of her death is not revealed, it is undisputed that Ms. Coleman died before her deposition could be taken. Plaintiff, therefore, argues that he needs any evidence which may exist of Coleman's earlier statements including statements made to  Hillcrest's attorney as revealed by his notes of the conversation.

In its initial motion and memorandum, filed before Plaintiff's motion, Hillcrest asserted that Carey was allowed to answer questions regarding his recollection of Ms. Coleman's statements to

3

counsel.[4]  Plaintiff does not contradict this statement.  Plaintiff, however, argues that Carey's

testimony was not sufficiently specific and that Hillcrest should be required to turn over counsel's

notes of his interview of Ms. Coleman.

     Plaintiff concedes that these notes are subject to work product protection as an attorney's

notes of his communications with a witness. Dkt No. 69-2 at 5.[5]  Plaintiff also acknowledges that

the notes may be subject to the attorney client privilege (presumably because the witness was an

employee and manager of the location in question speaking to the corporate owner's attorney as to

matters within the scope of her employment).  *Id.*  Plaintiff argues, nonetheless, that he should be

allowed to see the notes because he has shown a substantial need for the information (due to the

witness' death) and because there is no equivalent information otherwise available.[6]

     The latter premise is defeated, in part, by the disclosure of Carey's recollection of Coleman's

statement.  To the extent Carey's knowledge is incomplete and no other source of the information

is available, the court, nonetheless, finds that Plaintiff is not entitled to this information.

     What is at issue is not a transcribed or written statement given by a witness to a non-lawyer

immediately after the events at issue as in the case cited by Plaintiff, *National Union Fire Ins. Co.*

---

[4]  Carey was apparently present during this interview.

[5]  It is undisputed that Plaintiff had given a draft complaint to Hillcrest before this interview
took place. Dkt No. 69-2 at 5 & n.3.  Thus, Plaintiff concedes that the information was gathered in
anticipation of litigation.

[6]  Plaintiff also suggests some impropriety in Carey's lack of knowledge of the attorney's
notes by arguing that Carey has "deliberately [chosen] not to expose himself to [the] interview notes"
and has remained "willfully blind" to their content. Dkt No. 69-2 at 9. This suggestion is without
merit. Carey would have neither a duty nor, likely, any opportunity to see notes made by his
employer's attorney.  Moreover, to accept the underlying logic of Plaintiff's argument would
seriously damage, if not destroy, both the work-product protection and attorney-client privilege as
it would suggest parties (and their agents) have a duty to learn all that is known by counsel and may
then be deposed on the knowledge thus obtained.

*v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992) (remanding decision denying discovery of

non-party witness statements taken immediately after an industrial accident by corporate safety

officers for determination whether qualified privilege prong of work product doctrine applied and,

if so, whether the moving party had shown a substantial need for the statements).  Rather, the notes

at issue were taken by counsel in the course of his interview of a witness.  Such notes are of the type

which the Court found to be subject to protection in *Hickman v. Taylor,* 329 U.S. 495, 509-12

(1947).  After acknowledging that discovery of work product materials might be allowed as to some

categories of evidence held by counsel, the Court stated:

> But as to oral statements made by witnesses to [counsel], whether presently n the
> form of his mental impressions or memoranda, we do not believe that any showing
> of necessity can be made under the circumstances of this case so as to justify
> production.  *Under ordinary conditions, forcing an attorney to repeat or write out
> all that witnesses have told him and to deliver the account to his adversary gives rise
> to grave dangers of inaccuracy and untrustworthiness.  No legitimate purpose is
> served by such production.*  The practice forces the attorney to testify as to what he
> remembers or what he saw fit to write down regarding witnesses' remarks.  *Such
> testimony could not qualify as evidence*; and to use it for impeachment or
> corroborative purposes would make the attorney much less an officer of the court and
> much more an ordinary witness. The standards of the profession would thereby
> suffer.

*Hickman,* 329 U.S. at 512-13 (emphasis added).  See also  *Upjohn Co. v. United States,* 449 U.S.

383, 399-400 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral

statements is particularly disfavored because it tends to reveal the attorney's mental processes.").

Plaintiff has not, in any case, shown that Coleman's communication to counsel would not

be subject to absolute protection as an attorney-client communication, given her position with the

company.  Neither has he shown that it would be admissible as evidence at trial, the latter being

particularly critical to showing a substantial need for the evidence and contrary to the express

language in *Hickman*.  Both arguments were raised in Hillcrest's response to Plaintiff's motion,

were not addressed in the opening brief, and were not challenged on reply.

Though not expressly requested, the court will, nonetheless, require Hillcrest to provide Plaintiff with the following information regarding any known statements made by Ms. Coleman regarding the events at issue, including to counsel: the date and place of the statement, the identity of persons present when the statement was made (including the person to whom the statement was made); whether the statement was recorded and, if so, in what form and by whom. To the extent any statement so identified is in written form, is not subject to attorney-client privilege or work product protection, and has not yet been produced, it shall be produced. This shall be accomplished within fourteen days of entry of this order.

**Scope of discovery.** Plaintiff argues that the limitations on the scope of discovery imposed during an earlier teleconference should be modified. Specifically, this court limited discovery of complaints of racial discrimination to those arising from the Waffle House location where Crowe alleges he was subjected to discriminatory treatment. Plaintiff argues this limitation should be lifted because Carey's testimony establishes a "lack of any credible anti-discrimination enforcement policy" by Hillcrest. Dkt No. 69-2 at 9.

Even assuming that the specifically cited testimony is as represented by Plaintiff, the court does not find Plaintiff's arguments to support modification of the earlier limitation.[7] The court,

---

[7] A number of the cited passages which the court has found do not support Plaintiff's characerization of the testimony. The court has, moreover, had great difficulty locating most of the testimony on which Plaintiff relies. This is particularly true as to the Carey deposition. In some cases, Plaintiff has given the right page for the wrong transcript. (There are two transcripts of Carey's deposition.) While cumbersome, the court has checked both depositions for the cited passages. In numerous instances, however, the court could find no relevant testimony in either transcript within several pages before and after the cited page. Further, many of the page numbers provided are not within the deposition pages filed with the court. For present purposes and to avoid any unfair prejudice which might result, the court has accepted Plaintiff's characterization of testimony as correct except where the court has found the cited testimony and disagrees with

therefore, denies the motion to reconsider the limitation of discovery to discrimination complaints relating to the same Waffle House location at issue in this action.

## CONCLUSION

For the reasons set forth above, the court grants Defendant's motion for a protective order (Dkt No. 60), and grants in part and denies in part Plaintiff's motion to compel and for reconsideration (Dkt No. 69).

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 17, 2005

---

Plaintiff's characterization.

The search for deposition pages has been made particularly difficult by the difficulty in reading the transcript page numbers which appear to have been partially lost in the scanning process and further confused by the addition of both a facsimile transmission line and the court's document identification line. *See, e.g.,* Dkt No. 75 at pages 10-82. The court mentions these difficulties in hopes that counsel will, in the future: (1) insure that filed documents are numbered in a way that will allow the court to easily locate cited pages after filing in the court's electronic filing system; and (2) will check the documents after filing to insure that all intended pages were properly filed and are, in fact, legible (including any page numbers which the court may need to locate).